PRESENT:  All the Justices

BRADLEY GLENN POLLACK

OPINION BY
v.  Record No. 250150                     JUSTICE STEPHEN R. McCULLOUGH
October 16, 2025
VIRGINIA STATE BAR
EX REL. SEVENTH DISTRICT COMMITTEE


FROM THE CIRCUIT COURT OF SHENANDOAH COUNTY
Dontae L. Bugg, Chief Judge Designate,
David B. Franzen, and Carroll A. Weimer, Jr., Judges Designate


A three-judge panel concluded that Bradley G. Pollack, an attorney practicing in Woodstock, Virginia, violated several of the Rules of Professional Conduct that govern the conduct of attorneys.  Specifically, the three-judge panel held that Pollack had violated Rule 3.3(a)(1), which governs an attorney's duty of candor towards a tribunal; Rule 4.1(a), which regulates truthfulness in statements to others; and Rules 8.4(b) and (c), which address misconduct by attorneys.  The panel revoked his law license.  Pollack appeals from this order. For the reasons noted below, we affirm the finding of misconduct as well as the disciplinary sanction.

BACKGROUND

I.    POLLACK'S INVOLVEMENT WITH KATHLEEN KEARNEY

In February of 2023, Kathleen Kearney sought Pollack's help to address an issue with her reverse mortgage and to investigate and recover funds Kearney thought she was owed from the proceeds of a winning Powerball lottery jackpot.  On July 6, 2023, Kearney granted Pollack a written durable power of attorney, giving him broad authority over her affairs, including her finances and property.  At the time, Kearney was in declining physical health but appeared to be in good mental condition.  After Kearney granted Pollack the power of attorney, one witness

testified, Pollack "and his wife, and maybe his child came to [Kearney's] house and stayed for approximately a week and there w[ere] some documents missing from her house." According to this witness, Kearney became "afraid of Mr. Pollack" and said "she feared him." Kearney told a local attorney, Keith Richards, that she did not want Pollack to act on her behalf or to have any further involvement with him. Kearney's neighbor and occasional caregiver, Tammy Barnett, testified that Pollack had "overstepped big time." Barnett was concerned that Pollack had placed his name on Kearney's bank accounts, was not allowing Kearney to answer the phone, and was keeping Barnett at bay.

On July 12, 2023, less than a week after she had granted Pollack a power of attorney, Kearney obtained Richards' help to revoke it. Kearney also issued a "Notice of No Trespass" to Pollack, which stated in part:

> You . . . are notified not to trespass, enter upon, or in any manner come onto any of the property owned, leased, or rented by Kathleen E. Kearney.
>
> . . . .
> Nor are you to assault, attack, threaten, intimidate, or harass or in any manner annoy Kathleen E. Kearney. This notice also forbids any telephone calls to Kathleen E. Kearney.
>
> If you commit any of the above forbidden acts, you will be prosecuted to the fullest extent of the applicable criminal laws of the Commonwealth of Virginia.

Pollack received this notice the following day, July 13.

Almost immediately upon receiving this notice, Pollack sent an email to Richards, stating that he would "soon file a petition for the appointment of a guardian and/or conservator for Kathleen E. Kearney." A few days later, on July 18, Pollack circulated a draft petition to Richards and others. Pollack indicated that he intended to file the draft Petition with the Clarke County Circuit Court. This draft identified Richards as agent for Kearney in paragraph 6.

2

On July 21, Pollack filed a Petition with the circuit court.  In it, he stated that he was "Attorney in Fact" for Kearney, and that the "name, location, and post office address of agent designated under purported durable power of attorney of which the respondent is the principal was Bradley G. Pollack, Attorney at Law, 440 North Main Street, Woodstock, Virginia 22664." Unlike the draft Pollack circulated earlier, the Petition did not mention Richards as Kearney's agent.  In the Petition, Pollack asked the court to appoint him as Kearney's guardian and conservator.  The Petition had attached as Exhibit 2 a copy of the Power of Attorney signed by Kearney on July 6.  The Petition did not reference the Revocation or attach a copy of the Revocation.  The Petition did not state that Pollack was subject to the no trespass notice that had been issued by Kearney approximately one week before Pollack filed the Petition with the circuit court.  Pollack never served the Petition.  He testified that he filed the Petition to delay the sale of Kearney's house.[1]  Kearney did not understand why Pollack had filed the Petition.  According to Barnett, the Petition made Kearney "furious," and she had the locks on her house changed.

At the time Pollack filed the Petition, persons who interacted with Kearney disagreed about the state of her mental health.  The record also establishes that Kearney made contradictory decisions and could be influenced in her opinions based on her interactions.

A few weeks later, William B. Allen, III, counsel for Kearney in the Petition litigation, filed a Motion to Dismiss.  The Motion to Dismiss stated that Pollack's Power of Attorney was revoked on July 12, that Kearney was evaluated on July 28, and that she was found to have the appropriate insight and judgment regarding her legal and financial affairs.  The motion attached a letter from a physician assistant.  The letter stated that a cognitive assessment performed on July

---

[1] The parties presented evidence at the hearing concerning whether Kearney opposed the sale of the house, so she could spend her final days there, or whether the sale of the house was necessary so she could qualify for Medicaid and receive proper care.

28 indicated that Kearney was "competent in making independent decisions pertaining to finances, legal matters, and healthcare."

The circuit court appointed Jason E. Ransom as guardian *ad litem* for Kearney in the pending litigation. Ransom concluded that Kearney was not incapacitated. Ransom propounded discovery upon Pollack, seeking information about the basis for the allegations Pollack made in the Petition. Pollack received and reviewed the discovery requests on that day. The following day, Pollack nonsuited the Petition.

The circuit court granted the nonsuit but retained jurisdiction to adjudicate the fees and costs of the guardian *ad litem*. In connection with an upcoming hearing on the fees to be paid to the guardian *ad litem*, Pollack or his agent tendered a check from Pollack's general operating account to the Clarke County Circuit Court, identifying himself as "Bradley G. Pollack, ATTY AT LAW." At the time the check was written, Pollack's license to practice law in Virginia was suspended for reasons unrelated to Pollack's dealings with Kearney.

Pollack drafted an order in which he agreed to pay Ransom's fees and costs. The order stated that the Petition was filed in good faith and for the benefit of the Respondent. Neither Ransom nor Allen objected to the language of the order or its entry. On February 28, 2024, the Clarke County Circuit Court entered the Agreed Final Order, as drafted, in which Ransom's fees and costs were to be paid by Pollack. Both Allen and Ransom testified that they did not believe that Pollack had brought the action in good faith, and that the language of the order was incorrect. Allen explained that he signed the order because his client wanted the case to be over.

II.    THE DISCIPLINARY PROCEEDING AGAINST POLLACK

Barnett filed a bar complaint based on what she observed of Pollack's actions. The Seventh District Subcommittee of the State Bar issued a certification that Pollack had violated

4

several Rules of Professional Conduct. Specifically, the Subcommittee determined that Pollack had violated Rules 3.3(a)(1), governing candor toward the tribunal, and 8.4(b) and (c), governing attorney misconduct, by filing a petition for the appointment of a guardian and conservator that, among other things, made false statements and omitted material facts. The Subcommittee further determined that Pollack had violated Rule 4.1(a), governing truthfulness in statements to others, by issuing a check indicating that he was an "Attorney at Law" when, at the time he wrote the check, his license had been suspended. Finally, the Subcommittee determined that Pollack had violated Rule 3.1, which governs the filing of frivolous claims. Pollack elected to proceed before a three-judge panel.

Following a hearing, the panel found that Pollack had violated the following rules:

**Rule 3.3(a)(1):** Candor Toward the Tribunal: The Court found that Mr. Pollack violated Rule 3.3(a)(l) by knowingly and intentionally (1) making false statements of fact to the Clarke County Circuit Court in the Petition to appoint a Guardian and a Conservator for Ms. Kearney, (2) identifying himself as attorney-in-fact for Ms. Kearney, (3) failing to disclose to the Clarke County Circuit Court that the Power of Attorney had been revoked by Ms. Kearney at the time of the filing of the Petition, and (4) omitting any reference to the Revocation and the Notice of No Trespass.

**Rule 4.l(a):** Truthfulness in Statements to Others: The Court further found that Mr. Pollack violated Rule 4.l(a) by presenting a check to the Clarke County Circuit Court for the fee to serve subpoenas upon witnesses which indicated that Mr. Pollack was [an] "Attorney at Law" at the time Mr. Pollack was suspended from the practice of law.

**Rules 8.4(b) and (c):** Misconduct: The Court further found that Mr. Pollack violated Rule 8.4, subsections (b) and (c), by (1) making false statements to the Clarke County Circuit Court in a pleading, (2) omitting material facts from a pleading, and (3) seeking the appointment as Guardian and Conservator for Ms. Kearney when such appointment was wholly inappropriate and unreasonable under the circumstances.

5

The three-judge panel found that the Bar had not established by clear and convincing evidence that Pollack had violated Rule 3.1, which essentially prohibits filing frivolous claims or contentions.

As a sanction, the three-judge panel revoked Pollack's license to practice law. The panel cited "Pollack's disciplinary record and Mr. Pollack's failure to understand and appreciate his misconduct and the gravity of his misconduct."

Pollack appeals from the decision of the three-judge panel.

ANALYSIS

"[T]he State Bar has the burden of proving by clear and convincing evidence that the attorney violated the relevant Rules of Professional Conduct." *Weatherbee v. Virginia State Bar*, 279 Va. 303, 306 (2010).

In cases involving attorney discipline, we conduct an independent examination of the entire record pertaining to the charge before us. *Pilli v. Virginia State Bar*, 269 Va. 391, 396 (2005). "We consider the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Bar, the prevailing party in the . . . proceeding." *Id*. "We accord the [panel's] factual findings substantial weight and view those findings as prima facie correct." *Id.* "Although we do not give the [panel's] conclusions the weight of a jury verdict, we will sustain those conclusions unless it appears that they are not justified by a reasonable view of the evidence or are contrary to law." *Id.*

Pollack assigns the following errors:[2]

> 4. The Three-Judge Circuit Court erred by believing that the
> purported revocation of the power of attorney on July 12, 2023,
> was effective. This power of attorney, the second that Kathleen

---

[2] At the outset, we note that, in his reply brief, Pollack withdrew the first three assignments of error he raised in his opening brief. Accordingly, we do not address them.

Kearney had signed in Pollack's favor, was a durable power of attorney, and "the authority of my agent and attorney-in-fact shall not terminate if I become disabled, incompetent or incapacitated," which Pollack believed she had become at the time Kearney signed the purported revocation.

5. The Three-Judge Circuit Court erred by failing to recognize that Pollack's petition properly alleged that Kearney was "an incapacitated person" pursuant to Virginia Code § 64.2-1600 because he believed that she was: "incapable of receiving and evaluating information effectively or responding to people, events, or environments to such an extent that the individual lacks the capacity to (i) meet the essential requirements for his health, care, safety, or therapeutic needs without the assistance or protection of a guardian or (ii) manage property or financial affairs or provide for his support or for the support of his legal dependents without the assistance or protection of a conservator."

6. The Three-Judge Circuit Court erred by finding misconduct while also finding in paragraph 13 of the Memorandum Order that "At the time of filing, Ms. Kearney was suffering from physical frailty and at times her mental condition was in question and her conduct on a number of occasions contradicted prior decisions."

7. The Three-Judge Circuit Court erred by failing to recognize the overwhelming evidence in the case that Kathleen Kearney was not afraid of Respondent, left him several friendly voicemails that were played for the Court, and asked others for his assistance.

8. The Three-Judge Circuit Court erred by failing to recognize that although Kearney was evaluated on July 28, 2023, by a physician's assistant who put in writing that Kearney had the appropriate insight and judgment regarding her legal and financial affairs, the physician's assistant did not testify in this matter. Her boss, Dr. Susan Moose, did and testified that the physician's assistant had disavowed her previous opinion.

9. The Three-Judge Circuit Court erred by finding misconduct after finding that the following did not violate Virginia Rule of Professional Conduct 3.1. "By filing a Petition seeking to have himself appointed as Ms. Kearney's Guardian and Conservator without any medical evidence, nine (9) days after she revoked Respondent's Power of Attorney and issued a Notice of No Trespass to Respondent."

10. The Three-Judge Circuit Court erred by holding that Pollack was not candid to the Clarke County Circuit Court because the Clarke County Circuit Court previously found that Pollack had filed the guardianship petition in "good faith and for the benefit of" Kathleen Kearney.

11. The Three-Judge Circuit Court erred by finding that Pollack violated Virginia Rule of Professional Conduct 4.1(a) by presenting a check to the Clerk of the Circuit Court of Clarke County for the fee to serve subpoenas upon witnesses that indicated that Mr. Pollack was an "Attorney at Law" at the time Mr. Pollack was suspended from the practice of law as the writing of the check to the Clerk of the Circuit Court of Clarke County was not meant to lead that Clerk, who knew Pollack was suspended, to believe that he was practicing law.

12. As the Circuit Court of Clarke County found that Pollack filed the petition for guardianship "in good faith and for the benefit of" Kathleen Kearney, the Three-Judge Circuit Court erred by finding that Pollack violated Virginia Supreme Court Rule 8.4(b) and (c). In fact, Pollack complied with Virginia Code § 64.2-2002(B), made no false statements to the Clarke County Circuit Court in the petition for guardianship and left no material facts from it. Furthermore, the overwhelming testimony in Court was that his appointment as guardian and conservator for Ms. Kearney would have been appropriate and reasonable.

13. The Three Judge Circuit Court erred by revoking Pollack's license when none of his disciplinary history included any harm caused to any client.

I.     THE THREE-JUDGE PANEL APPROPRIATELY SANCTIONED POLLACK FOR VIOLATING RULES 3.3(a)(1) AND 8.4(b) AND (c).

The three-judge panel found that Pollack had violated Rule 3.3(a)(1) when he deliberately made false statements of fact to the circuit court in the Petition to have himself appointed as guardian and conservator for Kearney. Pollack identified himself as the "attorney in fact" for Kearney, but he failed to disclose to the circuit court that the power of attorney Kearney had granted him had been revoked at the time he filed the Petition, and he also failed to

8

mention the no trespass notice. For similar reasons, the three-judge panel found that Pollack had engaged in misconduct and thereby violated Rules 8.4(b) and (c).

Rule 3.3, captioned "Candor Toward the Tribunal," provides in subpart (a)(1) that "[a] lawyer shall not knowingly: make a false statement of fact or law to a tribunal." Rule 8.4, captioned "Misconduct," provides in subparts (b) and (c) that "[i]t is professional misconduct for a lawyer to . . . commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law;" and to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law."

Ample evidence established that Pollack violated Rules 3.3(a)(1) and 8.4(b) and (c) when he filed the Petition to have himself appointed as guardian and conservator for Kearney. He was well aware that Kearney had severed ties with him, that she had revoked his power of attorney, and that she wished to have no contact with him. He claimed to act under a power of attorney that he knew she had revoked, yet he failed to disclose that fact. Pollack offered no convincing explanation for why he deemed Kearney to have sufficient mental acuity to have him prepare a valid power of attorney in his favor on July 6, but less than a week later, on July 12, lacked the mental capacity to revoke the power of attorney. Tellingly, when Kearney's guardian *ad litem* submitted discovery to Pollack asking him to identify the factual basis for his belief that Kearney lacked mental capacity, Pollack promptly nonsuited the Petition.

In arguing for reversal, Pollack mainly contests the evidence presented by the Bar, and he stresses his version of the events. For example, he asserts that Kearney did not fear him, that the evidence supported a conclusion that Kearney needed a guardian or conservator, and he claims that he acted selflessly to advance Kearney's interests. There was conflicting evidence on these

9

factual points. The Bar offered evidence that Kearney feared Pollack, that she was furious about the filing of his Petition, that Pollack was not acting in Kearney's best interest, and that, while physically frail, Kearney possessed sufficient mental capacity to manage her affairs. Pollack challenged these points with his own evidence. The three-judge panel sifted all of this conflicting evidence. We will sustain the conclusions drawn by the panel "unless it appears that they are not justified by a reasonable view of the evidence or are contrary to law." *Pilli*, 269 Va. at 396. "When there are conflicts in the evidence before the [three-judge panel], we will state such facts in accordance with the [panel's] finding." *Blue v. Seventh Dist. Comm. of the Virginia State Bar*, 220 Va. 1056, 1058 (1980). The panel's conclusions are justified by a reasonable view of the evidence. Additionally, even if we agreed with Pollack on some of the factual points he raises, it would not excuse him from omitting from the Petition certain salient facts — namely, that Kearney had revoked the power of attorney she originally gave him, and that she had just issued a no trespass document directed at him.

In challenging the finding that he violated Rules 8.4(b) or (c), Pollack particularly stresses the importance of the order signed by the Circuit Court of Clarke County, which found that Pollack filed the Petition for Guardianship "in good faith and for the benefit of" Kearney. Pollack drafted this order. It is true that the attorneys involved in the case did not object and that the circuit court signed it. Nevertheless, as Pollack's counsel appropriately conceded at oral argument, the statement in the order is neither binding nor dispositive in the separate disciplinary proceeding. There are ample reasons why the three-judge panel could disregard the language of the order. First, the order was prepared by Pollack. The good faith language in the order appears to be a self-serving effort by Pollack to benefit himself. Second, there was no hearing at which evidence was presented to resolve the question of good faith. Therefore, the statement in the

order that Pollack had acted in good faith was not made following a development of the facts. Third, the other attorneys who were involved in the case testified that they did not think Pollack brought the Petition in good faith. Fourth, as a practical matter, agreed orders are typically not the subject of searching judicial scrutiny. Finally, the facts leading up to the filing and dismissal of the Petition, which the three-judge panel had before it and which the circuit court did not, support a conclusion that the Petition was not filed in good faith.

Pollack argues that his use of the term "purported" in his Petition when describing the power of attorney "put the trial court and anyone else that reads the Petition on notice that his status under the Power of Attorney referenced therein was in dispute and may not be valid." According to Pollack, the addition of "purported" means that he "did not misrepresent to the trial court that he was the undisputed agent of Kearney under the Power of Attorney."

Paragraph 6 of the Petition provides that:

> The name, location and post office address of agent designated under purported durable power of attorney of which the respondent is the principal:
>
> Bradley G. Pollack
> Attorney at Law
> 440 North Main Street
> Woodstock, Virginia 22664

We find this argument unpersuasive. First, in paragraph 1 of the Petition, Pollack described himself as Kearney's "attorney in fact" without qualification. Second, the mere insertion of the word "purported" does not alert the court that the person for whom Pollack sought to have himself appointed as guardian, and on whose behalf he claimed to act, had *expressly revoked* his power of attorney and, what is more, had issued a no trespass notice against him.

We also perceive no inconsistency between the panel finding a disciplinary violation of Rules 3.3(a)(1) and 8.4(b) and (c), while at the same time concluding that the Bar had failed to

11

prove by clear and convincing evidence that Pollack had violated Rule 3.1. Although there is some overlap in the conduct covered by these rules, Rule 3.1 is directed at the filing of frivolous claims. Rules 3.3(a)(1) and 8.4(b) and (c), however, are directed at dishonest conduct. The panel could have logically concluded that, given the mixed evidence concerning Kearney's mental capacity at the time the Petition was filed, an attorney could file a petition seeking the appointment of a guardian or conservator for her. The Petition Pollack filed, however, which sought to have himself appointed as her guardian and conservator, violated Rules 3.3(a)(1) and 8.4(b) and (c) because it stated that Pollack was Kearney's "attorney in fact," omitted to state that Kearney had revoked the power of attorney she granted Pollack, and never mentioned that she had issued a no trespass notice against him.

In short, we affirm the panel's decision concerning Pollack's violation of Rules 3.3(a)(1) and 8.4(b) and (c).

II. POLLACK DEFAULTED HIS CHALLENGE TO THE FINDING OF A VIOLATION UNDER RULE 4.1(a).

The three-judge panel found that Pollack had violated Rule 4.1(a) when he presented a check to the Clarke County Circuit Court, with "ATTY AT LAW" written on the check. At the time he presented the check, Pollack's license was suspended. Pollack assigns error to this finding.

Rule 4.1(a), captioned "Truthfulness in Statements to Others," provides as follows: "In the course of representing a client a lawyer shall not knowingly: make a false statement of fact or law."

On this point, the sum total of the argument Pollack offered in his opening brief was this:

> If Pollack were presenting himself as an attorney at law, he would have issued the subpoenas himself. The fee for subpoenas was merely written and signed by Pollack's assistant on an old operating account check that still had attorney-at-law on the heading. Pollack was still an attorney at law, he was just temporarily suspended and inactive at the time. The writing of the check to the Clerk of the

12

Circuit Court of Clarke County was not meant to lead that Clerk, who knew Pollack was suspended, to believe that he was practicing law.

Beyond these scattershot assertions, Pollack provided no authority in support of his contention that, although his license was suspended, he remained an attorney at law at the time he signed the check. He tendered no authority for the proposition that the person who hears or receives the false statement of fact or law must be misled.

"The burden lies with the appellant to show reversible error below." *Parrish v. Fannie Mae*, 292 Va. 44, 53-54 (2016). Under Rule 5:27, an appellant's opening brief must contain "principles of law and the authorities" in support of the argument for reversal. We have repeatedly held that when an appellant makes a cursory argument in support of an assignment of error and fails to provide sufficient legal reasoning, factual analysis, or citations to authority, the argument is waived. *See, e.g.*, *Coward v. Wellmont Health Sys.*, 295 Va. 351, 367 (2018) ("As we have often said, 'Lack of an adequate argument on brief in support of an assignment of error constitutes a waiver of that issue.'" (quoting *Andrews v. Commonwealth*, 280 Va. 231, 252 (2010))).

For the first time in his reply brief, Pollack did offer some limited authority, but that came too late. *Jeter v. Commonwealth*, 44 Va. App. 733, 740-41 (2005). Pollack further contended in his reply brief that writing a check on the operating account is not the practice of law. This argument was not presented in the trial court and is, therefore, defaulted under Rule 5:25. As a consequence, Pollack has waived our review of this assignment of error.

III. THE DISCIPLINARY SANCTION OF REVOCATION WAS ENTIRELY APPROPRIATE.

Finally, Pollack asserts that the sanction of revocation is not appropriate. He acknowledges his lengthy disciplinary history over several decades, but he attempts to slough it off by portraying himself as the victim. He claims that no clients were harmed through his actions.

First, we noted in Pollack's prior disciplinary appeal just over two years ago that Pollack *had* harmed his clients. *Pollack v. Virginia State Bar*, Record No. 220698, 2023 Va. Unpub. LEXIS 2, 27 (June 1, 2023). Second, a showing of harm to the client is not required for the Bar to impose a disciplinary sanction. Third, we are utterly unpersuaded by Pollack's attempts to portray himself as the righteous victim of persecution by the Bar and an assortment of corrupt government officials. Like the three-judge panel, we are dismayed by Pollack's "failure to understand and appreciate his misconduct and the gravity of his misconduct." And we cannot ignore his lengthy disciplinary history. In our prior opinion in 2023, in which we upheld a disciplinary sanction against Pollack, we noted the following:

> Beginning in 1999, the VSB has initiated disciplinary proceedings against Pollack on at least five occasions. On each occasion, Pollack has either admitted violations of the rules, been found by the pertinent authority to have violated the rules, or a combination of the two. Those five disciplinary proceedings established that Pollack has committed numerous violations of the rules over time with some of the violations being significant enough to warrant a two-year suspension of Pollack's license to practice law.

*Id.* at 29. Two years later, Pollack is back with yet another set of serious violations. With such a background, rife with disciplinary violations, we hold that the sanction of revocation is appropriate.

## CONCLUSION

The decision of the three-judge panel is affirmed.

*Affirmed*.

14